UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHIMENE HAMILTON ONYERI | § | No. A-22-CV-00800-DAE-SH |
| | § | A-16-CR-00241-DAE-11 |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES OF AMERICA , | § | |
| | § | |
| | § | |
| | § | |
| | § | |

ORDER ADOPTING U.S. MAGISTRATE JUDGE HIGHTOWER'S
<u>REPORT AND RECOMMENDATION</u>

On October 23, 2023, Judge Hightower issued a Report and Recommendation (the "Report") recommending that this Court deny Plaintiff Chimene Hamilton Onyeri's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence and deny his request for an evidentiary hearing.  (Dkt. # 368.) Onyeri filed no objection.  .

The Court finds this matter suitable for disposition without a hearing. After careful consideration, the Court—for the reasons that follow— **ADOPTS** Judge Hightower's Report.

## BACKGROUND

I.    Facts

Judge Hightower thoroughly and accurately recounted the facts in her Report. This Court reproduces them below in full:

Petitioner Chimene Hamilton Onyeri shot Texas State Judge Julie Kocurek four times in the face and upper torso in an attempt to avoid prison. Onyeri was convicted in this Court on seventeen counts of RICO violations, including the predicate offense of attempted capital murder, and sentenced to life imprisonment. The Fifth Circuit affirmed his conviction and sentence in a published opinion, U.S. v. Onyeri, 996 F.3d 274 (5th Cir. 2021). Onyeri now seeks to vacate his conviction and sentence under 28 U.S.C. § 2255.

Onyeri's criminal activities "involved a multitude of misdeeds that spanned almost half a decade." Onyeri, 996 F.3d at 276. Relevant here, from January 2012 through November 2015, Onyeri led his co-conspirators "in conducting the affairs of an enterprise through a pattern of racketeering activity consisting of multiple acts of mail fraud, wire fraud, bribery of a public official, identity theft, access device fraud, money laundering, conspiracy to commit money laundering, and murder." (Dkt. # 231 at 22.) After serving three years in prison, and while on bond for other state felony charges including violent crimes, Onyeri was arrested and charged in Texas state court for some of his fraudulent activity. Onyeri,

996 F.3d at 277.  He remained in state custody for one year and attempted to continue to lead his criminal enterprise from prison.  Id.

The Honorable Julie H. Kocurek, a Texas state judge for the 390th District Court in Austin, was assigned to Onyeri's case.  Id.  Onyeri pled guilty to the charges stemming from his 2012 arrest, and Judge Kocurek placed him on three years' deferred adjudication probation, under which he would not face conviction for those charges if he successfully completed probation.  Id.  But after two-and-a-half years, following allegations that Onyeri had engaged in fraudulent use of debit cards in Calcasieu Parish, Louisiana, the Government moved to proceed with an adjudication of guilt.  Id.  Judge Kocurek later testified that "she insisted the District Attorney's Office move quickly with Onyeri's case," reset the case for a hearing, and "suggested Onyeri may face six to seven years in prison."  Id.

On Friday, November 6, 2015, two days before the scheduled hearing, Onyeri placed a trash bag in front of Judge Kocurek's driveway.  As the family returned home from a high school football game, Judge Kocurek's 15-year-old son, Will Kocurek, was driving her SUV, with Judge Kocurek in the passenger seat and her nephew and sister in the back seat.  (Dkt. # 188 at 1.)  As Will pulled into the driveway, he noticed the bag and got out of the SUV to move it.  (Id.)  Onyeri then walked toward the driver's side of the vehicle and fired four to five shots through the driver's side window at Judge Kocurek, striking her in the face and arm.  (Id. at

1–2.)  At trial, Judge Kocurek testified that when Onyeri fired his gun, she was hit with "a wall of metal" and thought at that moment that she was "going to die" in front of her son, sister, and nephew.  (Trial Transcript, Dkt. # 332 at 41:7-13.)  Judge Kocurek was seriously injured in the shooting, suffering multiple gunshot wounds.  Onyeri, 996 F.3d at 277.

Onyeri fled in a getaway car.  A co-conspirator testified that, when he got in the car, he said: "I got that bitch. I got that bitch."  (Trial Transcript, Dkt. # 330 at 221:20-21.)  Onyeri testified that he was "happy" he shot Judge Kocurek and "scared the living hell" out of her son because "I had gotten my payback."  (Id., Dkt. # 334 at 5:17-6:7.)

On November 9, 2015, law enforcement received a tip that Onyeri was responsible for the shooting.  Investigators learned that there was an active warrant for Onyeri's arrest for felony larceny in Louisiana. (Id.)  The Houston Police Department ("HPD"), along with investigators of the Gulf Coast Violent Offender and Fugitive Task Force, began a search for Onyeri in the Houston area, where he was known to stay.  (Id.)  During the investigation, officers learned that Onyeri was traveling in or associated with a silver Dodge Charger with black wheel rims.  (Id.)  As officers interviewed witnesses at Onyeri's father's house, HPD Officer Derek Uresti and Deputy U.S. Marshal Jason Gullingsrud spotted the Charger heading toward the house and began to follow it.  (Id.)  Uresti testified that the officers

followed the car through the neighborhood, ultimately initiating a traffic stop when the Charger made an errant right turn.  (Id.)  Onyeri and several of his co-conspirators were arrested.  (Id.)

During the traffic stop, officers observed cell phones on the rear floorboard of the driver's side of the Charger, including a "smashed" Samsung Galaxy cell phone later identified as Onyeri's phone.  (Dkt. # 188 at 3.)  Officers had the Charger taken to a storage area until a search warrant was obtained.  (Id.)  Along with the warrant for the car, officers obtained state and federal search warrants for the cell phones recovered from the car and a separate warrant for cell-tower data. (Id.)  Despite the damage to Onyeri's phone, investigators were able to obtain evidence showing that he was in Austin at the time of Judge Kocurek's shooting, as well as text messages and photos implicating him in the shooting and other crimes. (Suppression Hearing Transcript, Dkt. # 190 at 38:5-41:23.)

II.   Procedural history

Onyeri and his co-conspirators were indicted in the Western District of Texas.  (Dkt. # 3.)  A seventeen-count Superseding Indictment, returned on December 20, 2016, charged Onyeri and his co-conspirators with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (Count One).  (Dkt. # 72 at 2.)  The pattern of racketeering activity consisted of "multiple acts" of mail fraud, bribery of a public official, wire

fraud, fraud in connection with identification documents, authentication features and information, access device fraud, conspiracy to commit money laundering, money laundering, and an act "involving murder." (Id. at 4.)  Count One also included a "Special Sentencing Allegation" that Onyeri and his co-conspirators "did, with specific intent to commit the offense of the Capital Murder of Julie Kocurek, attempt to intentionally and knowingly cause the death of Julie Kocurek in retaliation for and on account of the service and status of Julie Kocurek as a Judge of the District Court." (Id. at 7–8.)  The Superseding Indictment also charged Onyeri with conspiracy to commit mail fraud, in violation of 18 U.S.C §§ 1349 and 1341 (Count Two); aggravated identity theft, involution of 18 U.S.C. § 1028A(a)(1) (Counts 3, 5-9, and 11); conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343 (Counts 4 and 10); and six counts of tampering with a witness (Counts 12-17).  (Id. at 8–34.)

Onyeri pled not guilty to all charges.  On January 10, 2018, he moved to suppress the information obtained from his cell phone, arguing that the officers did not have probable cause to initiate the traffic stop that led to the phone's seizure.  (Dkt. # 154.)  The District Court held a multiday evidentiary hearing on the motion, during which the Court heard testimony from Onyeri; Reginald Matthews, the driver of the vehicle; HPD Officer Uresti; and Deputy U.S. Marshal

Gullingsrud.  The District Court denied Onyeri's Motion to Suppress, finding that Uresti had probable cause to initiate the traffic stop.  (Dkt. # 179; Dkt. # 188.)

Onyeri's jury trial commenced March 26, 2018 and lasted 20 days. (Dkt. # 207.)  Onyeri was represented at trial by attorneys Victor Arana and Lenard Martin Martinez.  At trial, thousands of exhibits were introduced and many witnesses testified, including Onyeri.  On March 26, 2018, the jury returned a unanimous verdict finding Onyeri guilty on all seventeen counts.  (Dkt. # 236.)

Onyeri moved for a new trial, arguing that the District Court should reconsider its decision to deny his Motion to Suppress; his conviction on Count One should be reversed because RICO's "pattern of racketeering activity" element is unconstitutionally vague; the jury instructions on Count One were erroneous and there was insufficient evidence to support a conviction; and the evidence could not establish the required mental state for attempted Capital Murder or to establish that the attempted Capital Murder was part of a pattern of racketeering activity.  (Dkt. # 243.)  The District Court denied the motion for new trial.  (Dkt. # 257.)  On October 2, 2018, the District Court sentenced Onyeri to a term of life imprisonment plus 24 months, a five-year term of supervised release, and $178,374.41 in restitution.  (Dkt. # 269.)

Onyeri filed a direct appeal, arguing that: (1) the District Court erred by admitting evidence obtained from the traffic stop because it was not supported

by probable cause or reasonable suspicion, claiming that Uresti's testimony was not credible; (2) there was insufficient evidence to support his RICO conspiracy conviction on Count One; and (3) the District Court erred in ordering his monthly annuity payments to be garnished.  The Fifth Circuit affirmed his conviction and sentence.  Onyeri, 996 F.3d at 278-83.  Onyeri did not file a writ of certiorari.  He now brings this Motion to Vacate under 28 U.S.C. § 2255, arguing that he was denied effective assistance of counsel and that the government committed prosecutorial misconduct.

## LEGAL STANDARD

I.   Review of a Magistrate Judge's Report and Recommendation

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).  "A judge of the court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

## II.   Motion for Relief Pursuant to 28 U.S.C. § 2255

Section 2255(a) permits a federal prisoner to file a motion "to vacate, set aside or correct" his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Challenging a conviction and sentence with a Section 2255 motion is "fundamentally different from a direct appeal." U.S. v. Samuels, 59 F.3d 526, 528 (5th Cir. 1995) (quoting U.S. v. Drobny, 955 F.2d 990, 994 (5th Cir. 1992)). "Once the defendant's chance to appeal has been waived or exhausted . . . [courts] are entitled to presume he stands fairly and finally convicted." U.S. v. Frady, 456 U.S. 152, 164 (1982). The "general rule" is that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. U.S., 538 U.S. 500, 504 (2003). Thus, relief under Section

2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." U.S. v. Acklen, 47 F.3d 739, 741 (5th Cir. 1995).

In a Section 2255 motion, a petitioner has the burden of sustaining his contentions by a preponderance of the evidence. U.S. v. Clay, 921 F.3d 550, 559 (5th Cir. 2019). On collateral review, courts view the facts in the light most favorable to the verdict. Drobny, 955 F.2d at 992.

III.    Sixth Amendment Right to Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).  To succeed on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Id. at 687.

To establish deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689.  The petitioner's burden is to show

"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

As for prejudice, a challenger must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011). Judicial scrutiny of counsel's performance "must be highly deferential." Strickland, 466 U.S. at 689.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. (citation omitted).

DISCUSSION

11

Onyeri argues that he was denied effective assistance of counsel when counsel failed to (1) impeach HPD Officer Uresti's testimony with his official police report during the suppression hearing; (2) properly prepare him to testify at trial; (3) argue that the government violated the Confrontation Clause; (4) move to dismiss Count One; and (5) argue on appeal that Uresti had testified falsely. Onyeri also argues that the government committed prosecutorial misconduct and violated his due process rights by knowingly using and failing to correct Uresti's allegedly false testimony. The Court will evaluate each argument in turn.

I.    Uresti's Police Report

The Court agrees with Judge Hightower in her analysis of Uresti's official police report ("Police Report"). (Dkt. # 381-1.) Onyeri argues that Uresti should have been impeached because Onyeri contends that "Uresti's Police Report did not mention that he was told to be on the lookout for the Dodge Charger with big black rims" or "that he was told that Onyeri was located inside [a] Dodge Charger with big black rims." (Dkt. # 375 at 23.) Therefore, Onyeri claims that Uresti never had probable cause to stop the silver Dodge Charger. Moreover, Onyeri asserts the Uresti was never briefed about the Silver Dodger Charger prior to the arrest. (Id. at 20.)

As Judge Hightower wrote, Onyeri misrepresents Uresti's Police Report. The Police Report clearly states that Uresti was briefed by officers

beforehand.  In the police report, Uresti notes that he was advised by U.S. Marshals that the suspect was inside the vehicle.  This vehicle was seen driving towards Onyeri's father's house and made an illegal turn.  While Uresti's testimony at the suppression hearing was more specific, it was entirely consistent with the Police Report.

Uresti's Police Report is also consistent with the testimony of other witnesses who testified before the District Court to the "Silver Charger with black rims."  For instance, Gullingsrud testified that after he stopped at 12383 Wellington Park Drive, he "saw the vehicle . . . that Onyeri was supposed to be in" – the "Silver Charger, black rims."  Based on all the evidence, the District Court found that Uresti had probable cause to initiate the traffic stop.

To prove prejudice, Onyeri must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  The Court agrees with Judge Hightower that Onyeri does not show how use of the Police Report would have changed the District Court's ruling.  "Counsel cannot be deficient for failing to press a frivolous point."  Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995).  Because a failure to make a frivolous argument "does not cause counsel's performance to fall below an objective level of reasonableness," the Court agrees

with Judge Hightower that Onyeri has not established that his attorneys were deficient.  Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998).

II.    Confrontation Clause

Onyeri argues that defense counsel was ineffective for failing to object to Deputy U.S. Marshal Gullingsrud's testimony at the suppression hearing on Confrontation Clause grounds.  Gullingsrud testified that when he was "in route" to Onyeri's father's house, Task Force members told him that:

> they had developed information from an interview at the father's house that Onyeri was in a silver Charger with black rims. And, shortly after that information was relayed, I was informed over the radio that somebody had seen the vehicle in the neighborhood and -- somebody had seen the vehicle in the neighborhood.

(Suppression Hearing Transcript, Dkt. # 190 at 75:20–25.)  Gullingsrud clarified that the "somebody" who had seen the vehicle in the neighborhood was "a task force member that had seen the vehicle."  (Id. 76:1–4.)

Onyeri believes that the Confrontation Clause was violated because the unnamed Task Force member "never testified."  (Dkt. # 375 at 31.)

Onyeri's argument is contrary to Fifth Circuit precedent.  As Judge Hightower noted, "testifying officers may provide context for their investigation or explain 'background'" facts.  Such out-of-court statements are not offered for the truth of the matter asserted therein, but instead for another purpose: to explain the officer's actions."  U.S. v. Kizzee, 877 F.3d 650, 659 (5th Cir. 2017) (citation

omitted).  Thus, officers may testify on a tip they received for "the limited purpose of explaining why they were at a particular location" because such information is "simply background information showing the police officers did not act without reason."  U.S. v. Vitale, 596 F.2d 688, 689 (5th Cir. 1979).

The Court agrees with Judge Hightower that Gullingsrud's testimony was not hearsay because it was used to explain why officers were looking for a silver Dodge Charger with black rims.  Therefore, the Confrontation Clause was not violated.

III.   Appellate Counsel

Onyeri argues that his appellate counsel, Edmond N. O'Suji, rendered ineffective assistance when he failed to argue on appeal that Uresti's testimony at the suppression hearing contradicted his statements in his Police Report.

As discussed above, Uresti's testimony did not conflict with his statements in his Police Report.

Even so, as Judge Hightower emphasized, O'Suji raised this argument in his opening appellate brief.  In "Issue Two," O'Suji argued that Onyeri's Fourth Amendment rights were violated because the traffic stop was initiated without probable cause or reasonable suspicion.  No. 18-50869, Dkt. # 38 at 20. Thereafter, Fifth Circuit rejected the argument, concluding that the officers had probable cause to make the traffic stop.  Onyeri, 996 F.3d at 279.

15

Just because appellate counsel was unsuccessful on appeal does not mean that he was deficient.  Therefore, the Court agrees with Judge Hightower that Onyeri's counsel did not render ineffective assistance.

IV.   Onyeri Testimony

Onyeri argues that his trial counsel rendered ineffective assistance of counsel when they allegedly failed to prepare him to testify at trial.

As Judge Hightower noted, this claim is conclusory because  Onyeri does not explain how the preparation "would have changed what he said, and how he said it, such that the results of the proceedings would have been different." Perez-Solis v. U.S., No. CR L-11-799-2, 2015 WL 12645531, at *6 (S.D. Tex. July 13, 2015).

Moreover, as Judge Hightower noted, the evidence contradicts Onyeri's allegation that defense counsel forced him to testify against his will.  In a sworn declaration, Trial Counsel Arana states that "it was against our advice" for Onyeri to testify at trial because counsel feared his testimony would alienate the jury.  (Dkt. # 380-4 ¶ 15.)  Arana further states that, "from the beginning, the defendant made it clear to us that he was going to testify regardless of counsel's advice.  Thus, the suggestion that defense counsel told him to testify and 'trust us' is inaccurate."  (Id. ¶ 14.)  Onyeri's appellate counsel also disputes that Onyeri was

forced to testify.  (Dkt. # 380-6 ¶ 1.)  Therefore, the Court agrees with Judge

Hightower that this claim of ineffective assistance of counsel also fails.

V.    RICO Claim

Onyeri argues that defense counsel was ineffective for failing to move

to dismiss Count One because "[a]ttempted capital murder, as charged in the

indictment is not listed [in the] definition of what constitutes a RICO activity"

under 18 U.S.C. § 1961(1).  (Dkt. 375 at 34.)

As Judge Hightower noted, several circuits have found that attempted

murder is a predicate offense under RICO.  See U.S. v. Nichols, 76 F.4th 1046,

1055 (8th Cir. 2023) (stating that "[a]ttempted murder is an underlying

"racketeering activity" under § 1961(1)); U.S. v. Farmer, 38 F.4th 591, 602 (7th

Cir. 2022) (""Racketeering activity' includes murder, attempted murder, arson,

robbery, extortion, and drug trafficking."), cert. denied, 143 S. Ct. 841 (2023); U.S.

v. Pungitore, 910 F.2d 1084, 1134 (3d Cir. 1990) (rejecting defendant's claim that

indictment was fatally defective because § 1961(1)(A) "does not specifically

mention attempted murder"); see also U.S. v. Johnson, 825 F. App'x 156, 166 (5th

Cir. 2020) (per curiam) (stating that "attempted murder" is a predicate offense

under RICO).

On Onyeri's direct appeal, the Fifth Circuit held that there was

sufficient evidence to support Onyeri's RICO conspiracy conviction based on

evidence presented at trial showing that Onyeri attempted to murder Judge Kocurek.  <u>Onyeri</u>, 996 F.3d at 280-81.

Therefore, the Court agrees with Judge Hightower that Onyeri cannot show prejudice.

## VI.   <u>Prosecutorial Misconduct</u>

Onyeri argues that the government committed prosecutorial misconduct and violated his due process rights by failing to correct Uresti's allegedly false testimony during the suppression hearing and at trial.   In the alternative, Onyeri argues that the government withheld Uresti's Police Report containing impeachment evidence until late in the proceedings, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).

Under <u>Brady</u>, the movant must show the evidence is material. Suppressed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>U.S. v. Bagley</u>, 473 U.S. 667, 685 (1985).

Judge Hightower concluded that Onyeri failed to meet any of the <u>Brady</u> factors and this Court agrees.  As stated earlier, the Court does not find the Police Report to be exculpatory or impeaching.  Moreover, the Court finds no fault or error in how Uresti's Police Report was handled.

## VII.   <u>Evidentiary Hearing</u>

Based on Court's review and adoption of Judge Hightower's Report, the Court denies Onyeri's request to hold an evidentiary hearing on his Section 2255 Motion.  "A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."  U.S. v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992); see also 28 U.S.C. § 2255(b).  Onyeri is not entitled to a hearing because the motion, files, and record conclusively show that he is not entitled to relief.

VIII.   Denying Leave to Amend

In Onyeri's Reply to the Government's Opposition to vacate his conviction and sentence, he raises multiple entirely new arguments.  (Dkt. # 391.) ("Def. Reply.)

First, Onyeri claims his counsel failed to return the case file and neglected to secure critical discovery materials.  (See Def. Reply at 2–5.)

Second, Onyeri claims his right to an attorney of choice came into question because one of his trial attorneys "request[ed] Criminal Justice Act funds from the court and from Onyeri's family as well."  (See id. at 12 n.3.)  Onyeri asserts his counsel had conflicting strategies, creating confusion.  Moreover, he argues that "the undisclosed involvement of a court-appointed attorney raises concerns about conflicts of interest."  (See id. at 15–17.)

Third, Onyeri claims his appellate counsel engaged in purportedly "[d]eceptive [c]onduct," "submitted an incomplete appeal," "turned in an appeal without informing Onyeri," and "failed to return Onyeri's case file." (See id. at 4 (emphasis omitted)).

The Rules Governing 2255 Proceedings for the United States District Courts require that a motion to vacate must, among other things, "specify all the grounds for relief available to the moving party," as well as "the facts supporting each ground." See Rules Governing Section 2255 Proceedings for the United States District Courts 2(b)(1), 2(b)(2) (emphasis added).

If a movant fails to include legal grounds or facts in his 2255 motion, a court is not required to consider them in a reply. See United States v. Cervantes, 132 F.3d 1106, 1110–11 (5th Cir. 1998).

There are three ways a movant may amend his 2255 motion. First, "[a] party may amend its pleading once . . . within 21 days after serving it." See Fed. R. Civ. P. 15(a)(1)(A). Second, "if the pleading is one to which a responsive pleading is required," "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading." Fed. R. Civ. P. 15(a)(1)(B). Third, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Onyeri does not fit into any of the three exceptions and therefore his new arguments will not be considered by the Court.  Further, the record does not support any of his new "arguments."

CONCLUSION

For the foregoing reasons, the Court **ADOPTS** Judge Hightower's Report and **DENIES** Onyeri's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Dkt. # 368.)  The Court **DENIES** a certificate of appealability in this case.


**IT IS SO ORDERED**.

**DATED**: Austin, Texas, February 2, 2024.

_____
David Alan Ezra
Senior U.S. District Judge